## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID RHEE,
as personal representative for
the ESTATE OF JUSTIN KRANTZ,

        Plaintiff,

v.                                                 No. 1:24-cv-00082-MIS-JMR

CORECIVIC, INC.,
WARDEN ROBERT NILIUS,
OFFICER L. RODRIGUEZ,
OFFICER T. TOWNLEY,
OFFICER N. WEIS,
OFFICER K. WEST, and
OFFICER J. QUINTANA,

        Defendants.

### FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff David Rhee, as personal representative of the Estate of Justin Krantz, by and through undersigned counsel, brings this First Amended Complaint for Damages against Defendants CoreCivic, Inc. (hereinafter "CoreCivic"), Warden Robert Nilius, Officer L. Rodriguez, Officer T. Townley, Officer N. Weis, Officer K. West, and Officer J. Quintana, asserting claims under the New Mexico Wrongful Death Act, NMSA 1978, §41-2-1, *et. seq.*, the U.S. Constitution, and negligence claims. Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.      This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 (a)(3). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

2.      The United States District Court for the District of New Mexico is an appropriate

venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occurred.

## PARTIES

3.       Plaintiff David Rhee is a resident of Bernalillo County, New Mexico, and is the personal representative of the Estate of Justin Krantz. *See In the Matter of the Wrongful Death of Justin Krantz*, D-1333-CV-2023-00111. Plaintiff brings this action on behalf of the Estate of Justin Krantz, and other statutory beneficiaries pursuant to the New Mexico Wrongful Death Act, NMSA 1978, §41-2-1, *et. seq.* Justin Krantz was a detainee at Cibola County Correctional Center ("CCCC") under the care and custody of Defendants awaiting probation revocation proceedings and adjudication.

4.       Defendant CoreCivic is a private contractor systematically organized to manage prison facilities, which operates CCCC in Milan, New Mexico. At all relevant times, Defendant CoreCivic employed, retained, trained, and exercised direct supervisory control over the individually named Officer Defendants and Warden Nilius.

5.       Defendant Warden Robert Nilius, is, or was at the relevant time, the warden for CCCC, in charge of supervising and training Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana. Defendant Warden Nilius is, or was at the relevant time, an employee, agent, or otherwise under the supervisory control of Defendant CoreCivic at the CCCC, who, at the time of the events described herein, was providing services in the facility. At all relevant times, Warden Nilius acted under the color of law within the scope of his duties and employment.

6.       Defendants Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana ("Officer Defendants") are, or were at the relevant time, employees, agents, or otherwise under the supervisory control of Defendant CoreCivic at CCCC, who, at the time of the

2

events described herein, were providing services in the facility. At all relevant times, the Officer

Defendants acted under the color of law within the scope of their duties and employment.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**I.     Justin Krantz's pre-adjudicatory incarceration at Defendant CoreCivic's CCCC and mental health diagnosis.**

7.     On June 21, 2021, Mr. Krantz was arrested on an alleged violation of his

probationary conditions. *See United States v. Krantz*, 1:16-cr-04004 (D.N.M., Riggs, J.).

8.     Mr. Krantz was being held at CCCC pending the revocation proceedings.

9.     Mr. Krantz died prior to any adjudication of the alleged probationary violations.

10.    Upon arriving at CCCC, Mr. Krantz was diagnosed with post-traumatic stress

disorder (PTSD), bipolar disorder, and severe depression.

11.    As a result, Mr. Krantz was prescribed Lithium Carbonate 150MG, 1 tablet to be

taken twice a day, Oxcarbazepine 150MG, 1 tablet to be taken twice a day, and Venlafaxine HCl

ER 150 MG Oral Tablet to be taken once a day.

12.    Soon after initiating this treatment, Mr. Krantz was given lesser doses (half of the

recommended amount) of these medications, they removed the intake of some of these

medications, and at times he did not take these medications at all.

13.    Mr. Krantz was taking Venlaxafine at half of the original dose. He was also no

longer being provided lithium carbonate since December 2021.

14.    Mr. Krantz would sometimes not appear to take his medications because Defendant

CoreCivic's correctional officers did not attempt to escort him to see his medical provider within

the facility.

15.    At other times, he would refuse to take his medications due to his PTSD, bipolar

disorder, and severe depression.

16.     On other occasions, the facility was out of stock of Mr. Krantz's prescribed medications.

17.     Rather than escorting him or trying to work with him to take his medications, staff would simply ignore Mr. Krantz/abandon Mr. Krantz in his cell.

18.     Defendants failed to provide him with any medications for those days.

19.     The failure to provide medication and not providing medication in appropriate doses causes severe mood imbalances which can make a person suicidal.

20.     Defendants' failure to provide medication in appropriate doses or at all severely affected Mr. Krantz's mental health throughout his incarceration at CCCC.

21.     Despite being diagnosed with PTSD, bipolar disorder, and severe depression, Defendant CoreCivic failed to continue to evaluate and regularly monitor Mr. Krantz's mental health condition. Defendant CoreCivic's medical staff never re-evaluated Mr. Krantz's mental health and failed to provide him with adequate counseling and care.

**II.     History of Detainee Suicides within the Past Four Years at Defendant CoreCivic's New Mexico Facilities.**

22.     From 2019 to 2022, there were at least five other detainee suicides with similar circumstances to this present case at Defendant CoreCivic's facilities in New Mexico.

23.     On February 19, 2019, Mr. Asher committed suicide by hanging himself from a bed sheet tied to his bunk bed.

24.    Mr. Asher's fellow detainee, not a correctional officer, found Mr. Asher hanging from the bunk bed and proceeded to assist him. Mr. Asher was already dead at this point.

25.    On February 19, 2020, Mr. Guilez committed suicide by tying a bed sheet to his neck. Upon information and belief, the bed sheet was tied to the top bed bunk.

26.    On March 20, 2020, Mr. Lopez committed suicide by tying a bed sheet to the sprinkler head.

27.    On November 24, 2020, Mr. Camacho committed suicide by tying a bed sheet to the top bunk bed.

28.    On January 21, 2021, Mr. Peña committed suicide by tying a bed sheet to the top bunk bed.

29.    In each of these cases, correctional officers failed to correctly supervise and monitor the detainees and the cells, resulting in at least several minutes and in some cases several hours passing before a correctional officer responded to the scene.

**III.    Facts Regarding Defendants' Policies, Customs, Practices, and/or Patterns.**

30.    Defendants CoreCivic and Warden Nilius have the following identifiable policies, customs, practices, and/or patterns.

31.    These Defendants allow detainees to cover their cell windows with towels, blankets, and other materials that obstruct the view inside of the cell.

32.    These Defendants fail to provide adequate medical care to detainees that require mental health treatment, do not have adequate staffing, and do not provide adequate training to employees..

33.    These Defendants fail to monitor the detainees' actions and any communications sent to outside individuals due to inadequate staffing and employee training.

34.     Defendant CoreCivic and Defendant Warden Nilius approved of these policies, customs, practices, and/or patterns.

**a.  Covering of cell window.**

35.     Defendants CoreCivic and Warden Nilius allow detainees at their CCCC facility to cover their cell window with sheets, towels, and other materials.

36.     Garrick Peterson, a former CoreCivic officer at CCCC, stated during a deposition that it was the norm for detainees to cover their windows with sheets to block the view inside of the cell.

37.     He testified that detainees are not allowed to place sheets over their windows.

38.     He stated:

> [They are not allowed to cover their cell] [b]ecause you can't really see what they're doing. They could be offing themselves or making a weapon or they might just be deceased. We need to see their faces at all times.

Dep. of Garrick Peterson, 31:22-25.

39.     Mr. Peterson testified that whenever they see detainees covering their cells with sheets, blankets, or towels, they are trained to *ask* detainees to take the covering down.

40.     Mr. Peterson testified that when he initially started working at CCCC, he would take down the sheets but eventually the officers at CCCC, including himself, just gave up and allowed the detainees to cover their cells.

41.     He testified that the detainees knew that the guards were not going to enforce the policy.

42.     He further testified that he was never disciplined for failing to follow the policy.

43.     He testified that the supervisors, including Defendant Warden Nilius, were aware of this issue and no remedial action was taken by the supervisors.

44.    He then testified that this was the only policy that was not enforced during his time at CCCC.

**b. Lack of adequate medical care for detainees that require mental health treatment and inadequate staffing and training.**

45.    Defendant CoreCivic is responsible for the training, supervision, and actions of its employees who have responsibility for the maintenance and operation of the CCCC. Defendant CoreCivic is responsible for the actions of its employees through the doctrine of *respondeat superior*.

46.    Defendant CoreCivic maintains policies and procedures to ensure that individuals held in its custody at the CCCC are safe and has guaranteed in its policies, procedures, and agreements with Cibola County that it will take reasonable steps to protect the health and safety of detained individuals.

47.    As part of its duties as the private operator of the CCCC, Defendant CoreCivic is contractually obligated to comply with the American Correctional Association (ACA) Standards for Adult Local Detention Facilities, the National Commission on Correctional Health Care (NCCHC) Standards for Health Services in Jails, along with several other federal and state laws, regulations, and policies.

48.    Defendant CoreCivic knows or should know that suicide is a leading cause of death among individuals held in custodial settings.

49.    Defendant CoreCivic policies, and federal and state laws, policies, and regulations require Defendant CoreCivic to create a facility-wide multidisciplinary suicide prevention committee to gather at least quarterly to provide input regarding all aspects of the facility's suicide prevention and intervention program – including policies and staff training.

50.     Defendant CoreCivic policies, as well as federal and state laws, policies, and regulations, require that all staff in the facility who are interacting with detained persons must be trained in significant self-harm and suicide prevention. This requires Defendant CoreCivic staff to be trained and aware of warning signs of impending suicidal behavior, responding to suicidal and depressed individuals, proper and transparent communication between correctional and health care personnel, housing observation for persons at risk of suicide, and population-specific factors that increase an individual's suicide risk.

51.     The same policies require staff to continually re-assess and "remain vigilant in recognizing" and reporting a person who is at risk of impending suicide.

52.     An individual who is identified as "at risk" for self-harm or suicide should be referred to a mental health provider.

53.     A person who is at risk of suicide should not be placed in a location by themselves with objects or clothing that could be used in a suicidal manner.

54.     Defendant CoreCivic policies, federal and state laws, policies, and regulations, and the standard of care require mental health professionals and correctional staff to have continuity of communication regarding detained individuals who are at higher risk for self-harm or suicide.

55.     Defendant CoreCivic policies, federal and state laws, policies, and regulations, and the standard of care require qualified health professionals to recognize whether a detained person has a "serious mental illness" (SMI). Detained persons are classified as having an SMI if they have a mental disorder that is causing serious limitations on their activities of daily life or if they show significant symptoms of major depressive disorder with psychotic features, among other criteria.

8

56.     If a detained person is characterized as having an SMI, Defendant CoreCivic's mental health professionals must create a comprehensive treatment plan and assign a treatment team to that detained person's care.

57.     Contrary to the standard of care, Defendant CoreCivic's policies fail to require subsequent formal suicide risk assessments to be conducted by qualified mental health professionals after the initial risk assessment is performed.  A comprehensive evaluation should be taken, and – if warranted – that person should be placed in a secure environment on a constant one-to-one visual observation.

58.     CoreCivic policies, federal and state laws, policies, and regulations, and the standard of care require qualified mental health and medical professionals to conduct an extensive documented evaluation to determine a detained person's level of suicide risk, level of supervision, and need for transfer.

59.     During the relevant time period, upon information and belief, Defendant CoreCivic did not have such a procedure, nor did it implement such a procedure.

60.     Detention centers have a duty to maintain tight control over cell assignments in custodial detention settings. Cell assignment is an integral aspect of maintaining the safety of detained persons in a custodial setting. Cell assignments require a procedure of monitoring and approval that takes into account factors including histories of violence, vulnerability to sexual victimization, and mental health issues.

61.     CCCC failed to maintain this level of control and failed to have a procedure of monitoring and approval in place as described above.

62. During an inspection, the U.S Government, through the Department of Homeland Security, found that the mental health program at CCCC is inadequately staffed to meet detainees' mental health needs.

63. It further found that insufficient mental health staffing has contributed to delays found in access to mental health care and problematic mental health documentation.

64. It also found that CCCC's medication procurement and management processes and procedures are problematic and can lead to detainee health risks.

65. The current practice results in detainees missing critical medications, medication delays, or receiving the wrong medications.

66. It found that CCCC does not have a reliable medication refill process or medication renewal process, which disrupted detainees' medication continuity.

67. It further found that the pharmacy tech and the nursing staff did not have adequate training related to medication management.

68. Last, it found that the clinic staff schedule appointments for detainees who need to be seen by a medical provider (physicians and nurse practitioners). The appointments are scheduled based on the medical provider's planned shift schedule. However, the providers often do not show up for their scheduled shift, causing the need for detainee-patient rescheduling.

**c. Failure to adequately monitor detainees due to inadequate staffing.**

69. Defendant CoreCivic fails to appropriately monitor communications between outside persons and detainees by failing to staff the monitoring system.

70. Due to inadequate staffing, Defendant CoreCivic bypasses their communication approval process and merely auto-approves the communications sent by detainees.

71.     Defendant CoreCivic policies require that messages and calls made by detainees must be monitored by staff.

72.     Due to the number of detainees and messages sent and received, and the lack of adequate staffing, Defendant CoreCivic does not follow its own policy.

73.     Defendant CoreCivic and its staff could review messages and look for warning signs of danger to the safety of detainees but fail to do so.

74.     During the last months of his life, Mr. Krantz exchanged concerning communications with his spouse.

75.     Defendant CoreCivic has a system that allows it and its employees/agents to review, flag, and approve these communications before they are sent to the recipient.

76.     However, Defendant CoreCivic did not have dedicated staff reviewing these messages and would merely auto-approve and set a yellow flag on these messages.

77.     On March 16, 2022, Mr. Krantz had been struggling with his mental health for several weeks.

78.     On that day, Mr. Krantz sent a last message to his spouse before committing suicide, He stated in part, "I'll handle this alone like always." The message was sent at approximately 9:45 PM.

79.     Mr. Krantz proceeded to hang himself with a bed sheet.

**IV.     The suicide of Justin Krantz on March 16, 2022 at CCCC.**

80.     On March 16, 2022, Defendants West and Quintana were the shift supervisors, Defendant Weis was in charge of central control and monitoring surveillance, and Defendants Townley and Rodriguez were assigned to Units 100-200 where Mr. Krantz was located.

81.    At approximately 10:06 PM, Defendant Townley approached Mr. Krantz's cell and saw that he had a towel or bed sheet blocking the cell's window.

82.    Defendant Townley did nothing about the obstructed window/policy violation and instead proceeded to walk around the other cells.

83.    At 10:25 PM, Defendant Rodriguez entered the cell block and then entered Mr. Krantz's cell for count.

84.    Defendant Rodriguez observed Mr. Krantz hanging from his neck with a bed sheet attached to the top bed bunk.

85.    Defendant Rodriguez called for immediate assistance.

86.    Officer Yazzie responded with a cut-down tool and cut the bed sheet tied to Mr. Krantz's neck.

87.    Defendants Rodriguez and Townley began CPR.

88.    At 10:28 PM, medical staff for CCCC arrived and continued life-saving measures.

89.    At 10:40 PM, emergency medical services arrived but at that point, Mr. Krantz had already passed away.

90.    Mr. Krantz was declared dead due to hanging at 1:01 AM when OMI arrived.

91.    Mr. Krantz committed suicide at the age of 36.

92.    Defendants West and Quintana were the shift supervisors at the time of the incident and failed to make sure that all policies were followed, including the policy that prevents detainees from covering their cell window.

93.    Defendant Weis was in charge of central control and monitoring surveillance and failed to closely monitor Mr. Krantz's cell at the time of his death in order to prevent Mr. Krantz from covering his window cell.

94.     Defendants Townley and Rodriguez failed to remove the sheet that was covering Mr. Krantz's cell window and in fact knew that the window cell was covered.

## COUNT I
## WRONGFUL DEATH BY ALL DEFENDANTS

95.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

96.     Mr. Krantz died of suicide in the custody of Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana.

97.     Mr. Krantz's death was caused by Defendant CoreCivic, Warden Nilius's, Officer Rodriguez's, Officer Townley's, Officer Weis', Officer West's, and Officer Quintana's wrongful act, neglect or default.

98.     Defendants CoreCivic, Inc., Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana knew or should have known that Mr. Krantz was depressed and suicidal.

99.     Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana had a duty to prevent Mr. Krantz's suicide while in their custody.

100.    Defendants CoreCivic's, Warden Nilius's, Officer Rodriguez's, Officer Townley's, Officer Weis', Officer West's, and Officer Quintana's failure to adequately supervise Mr. Krantz while depressed and suicidal caused Mr. Krantz's death.

101.    Defendant CoreCivic's and Defendant Warden Nilius's failure to adequately supervise the Officer Defendants and Mr. Krantz while Mr. Krantz was depressed and suicidal caused Mr. Krantz's death.

102.     Defendant CoreCivic is therefore liable for the acts and/or omissions of Defendants Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana under the doctrine of respondeat superior.

103.     As a result of the foregoing, Mr. Krantz's estate is entitled to recover compensatory and punitive damages in an amount to be determined at trial.

**COUNT II**
**VIOLATIONS OF THE FOURTEENTH AMENDMENT BY ALL DEFENDANTS**
**UNDER 42 U.S.C. § 1983**

104.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

105.     The Fourteenth Amendment provides protections to pretrial detainees held in jails awaiting probation revocation charges. *See Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010) (explaining that when a plaintiff is detained before an adjudication of guilt "neither the Fourth nor Eighth Amendment applies ... [and] we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities."); *see also Kretek v. Bd. of Commissioners of Luna Cnty.*, No. CIV 11-0676 RB/GBW, 2013 WL 12039991, at *6 (D.N.M. Apr. 29, 2013) (finding that plaintiff was in pretrial detention on a state probation revocation charge, and thus, "the due process standard of the Fourteenth Amendment applies.").

106.     Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana were deliberately indifferent to Mr. Krantz's depression.

107.     Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana were aware that Mr. Krantz had a significant risk that he would commit suicide; that he had recently made comments to fellow detainees

14

regarding his mental status, depression, and familial problems, which significantly increased the risk that he would commit suicide; and that he was in fact suicidal.

108.    Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana were aware that their inaction made it foreseeable that Mr. Krantz would commit suicide, and they consciously disregarded that risk.

109.    Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana were deliberately indifferent to their supervisory responsibilities, including but not limited to, the provision of adequate training, procedures, screening, staffing, and supervision regarding suicide prevention at CCCC.

110.    Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana nonetheless failed to take adequate steps to address and/or mitigate the risk that Mr. Krantz would commit suicide.

111.    Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana were aware that their inaction made it foreseeable that Mr. Krantz would commit suicide, and they consciously disregarded that risk.

112.    Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana were aware that their actions and omissions created a substantial risk of serious harm.

113.    Defendants CoreCivic's, Warden Nilius's, Officer Rodriguez's, Officer Townley's, Officer Weis', Officer West's, and Officer Quintana's conduct was a substantial factor and a proximate cause of the constitutional violations alleged in this Complaint and of Mr. Krantz's resultant damages, alleged.

114.    Defendants CoreCivic's, Warden Nilius's, Officer Rodriguez's, Officer Townley's, Officer Weis', Officer West's, and Officer Quintana's deliberate indifference to Mr. Krantz's serious suicide risk proximately caused Mr. Krantz to suffer extreme pain and suffering and death.

115.    Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana acted at all relevant times hereto willfully, wantonly, maliciously, and/or with such reckless disregard of consequences as to reveal a conscious indifference to the clear risk of death or serious injury to Mr. Krantz that shocks the conscience.

116.    Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana acted under pretense and color of state law.

117.    As a result of the foregoing, Defendants CoreCivic, Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana deprived Mr. Krantz of rights, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution, and Mr. Krantz suffered the damages alleged.

118.    Defendant CoreCivic and Defendant Warden Nilius had a policy to adequately supervise Mr. Krantz and had a policy to adequately ensure the Officer Defendants adequately supervise depressed and suicidal detainees, including Mr. Krantz, and thus failed to follow this policy.

119.    Defendant CoreCivic's and Defendant Warden Nilius's failure to adequately supervise the Officer Defendants and Mr. Krantz while Mr. Krantz was depressed and suicidal caused Mr. Krantz's death.

120.    As a result of the foregoing, Mr. Krantz's estate is entitled to recover compensatory and punitive damages in an amount to be determined at trial.

**COUNT III**
**MEDICAL NEGLIGENCE BY DEFENDANT CORECIVIC**

121.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

122.    Defendant CoreCivic and its medical staff were under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by well-qualified correctional medicine entities and correctional medical providers practicing under similar circumstances.

123.    Defendant CoreCivic and its medical staff knew or should have known that medical staffing at CCCC was deficient and that it was resulting in inadequate care for detainees in the CCCC in 2022.

124.    Defendant CoreCivic and its medical staff knew or should have known that Mr. Krantz had a serious and obvious mental health condition that put him at risk of suicide or serious self-harm and he had put Defendant CoreCivic and its medical staff on notice that he needed to have his mental condition monitored.

125.    Defendant CoreCivic and its medical staff knew or should have known that Mr. Krantz should have been closely monitored or placed on suicide watch.

126.    Defendant CoreCivic is vicariously liable for the negligence of its medical staff.

127.    Defendant CoreCivic, acting through its employees, agents, apparent agents, or contractors, failed to exercise ordinary care and failed to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified healthcare providers, physicians,

nurses, nurse practitioners, technicians, etc., operating under similar circumstances, giving due consideration to the locality involved.

128.    As described above, Defendants breached these duties and failed to prevent Mr. Krantz's suicide, which was foreseeable under the circumstances.

129.    Defendant CoreCivic's negligent care, management and treatment of Mr. Krantz was an actual and proximate cause of Mr. Krantz's death and the Estate's damages.

**COUNT IV**
**NEGLIGENCE BY DEFENDANT CORECIVIC**

130.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

131.    Defendant CoreCivic and its staff were under the duty to exercise reasonable care for the safety of its detainees, including Mr. Krantz.

132.    Further, Defendant CoreCivic had a special relationship with Plaintiff as a detainee held against his will that required a special duty of care to Plaintiff.

133.    Defendant knew or should have known that its staffing was deficient and that it was resulting in inadequate care for detainees in CCCC in 2022.

134.    Defendant CoreCivic knew or should have known that Mr. Krantz had a serious and obvious mental health condition that put him at risk of suicide or serious self-harm.

135.    Defendant CoreCivic knew or should have known that Mr. Krantz should have been closely monitored or placed on suicide watch.

136.    Defendants Warden Nilius, Officer Rodriguez, Officer Townley, Officer Weis, Officer West, and Officer Quintana, and all CCCC personnel mentioned above were employees of Defendant CoreCivic at CCCC and were acting within the scope of their employment. Therefore, Defendant CoreCivic is vicariously liable for the actions of these employees.

137.    At all times, Defendants owed Plaintiff the duty to act with reasonable care including, but not limited to the duties of:

**a.**   Providing appropriate personnel in the care of individuals with suicide risk factors;

**b.**   Selecting, hiring, training, reviewing, periodically supervising, evaluating competency, and retaining counselors, physicians, employees and agents;

**c.**   Identifying, monitoring, and responding to suicidal and depressed detainees;

**d.**   Maintaining communication between correctional and mental health personnel regarding detainees who are at risk of suicide or self-harm;

**e.**   Properly documenting administration of medication to detainees;

**f.**   Ensuring access to medical care and mental health care for persons with deteriorating mental health conditions; and

**g.**   Creating and enforcing procedures for the monitoring of detainees in their housing unit and cell assignments, including preventing the covering of cell windows

138.    As described above, Defendant CoreCivic breached these duties and failed to prevent Mr. Krantz's suicide, which was foreseeable under the circumstances.

139.    Defendant's negligence was an actual and proximate cause of Mr. Krantz's death and the Estate's damages.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

a.      An award of compensatory damages for the lost earnings, lost earning capacity, value of the lost household services of Mr. Krantz, expenses of necessary medical care, treatment, funeral and burial, the pain, suffering, mental anguish and distress, emotional distress, loss of enjoyment of life, and death suffered by Mr. Krantz, in an amount to be determined at trial;

b.      An award of compensatory damages for the pain, suffering, mental anguish and distress, loss of consortium, loss of the society, loss of guidance and counseling, sexual relations, and emotional distress suffered by Plaintiff for the loss of Mr. Krantz, in an amount to be determined at trial;

c.      An award of punitive damages against the Defendants in an amount to be determined at trial;

d.      Pre- and post-judgment interest;

e.      An award of reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

f.      For such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs, and disbursements of this action.

DATED: May 6, 2024                    Respectfully submitted,

**THE SOTO LAW OFFICE, LLC**

*/s/ Ramón A. Soto*

Ramón A. Soto
300 Central Ave. SW
Suite 2500W
Albuquerque, New Mexico 87102
Office: (505) 273-4062
Fax: (505) 494-1092

ramon@thesotolawofficellc.com

- & -

**SMITH & MARJANOVIC LAW, LLC**

*/s/ Taylor E. Smith*
Taylor E. Smith
PO Box 94207
Albuquerque, NM 87199-4207
Office: 505-510-4440
Fax: 505-557-1163
taylor@legalhelpnm.com

*Attorneys for Plaintiff*